# UNITED STATES BANKRUPTCY COURT

### EASTERN DISTRICT OF VIRGINIA
### NORFOLK DIVISION

| | | |
|---|---|---|
| In re: | ) | Case No. 08-70160-SCS |
| | ) | |
| TRACY B. CUTRIGHT, | ) | |
| | ) | Chapter 7 |
| *Debtor*. | ) | |
| | ) | |

## MEMORANDUM OPINION

This matter comes before the Court upon the Motion to Reopen Case and to Obtain Leave of Court for Dell L. Eisenbarth to File Suit Against Trustee Tom C. Smith in State Court ("Motion") and Memorandum in Support ("Memorandum") filed on July 15, 2011, by Dell L. Eisenbarth ("Eisenbarth") pursuant to 11 U.S.C. § 350 and in accordance with *Barton v. Barbour*, 104 U.S. 126 (1881).  The Trustee's Response in Opposition to the Motion ("Response") was filed by Tom C. Smith, Jr., Chapter 7 Trustee, on October 5, 2011.  Eisenbarth filed his Rebuttal Memorandum in Support of the Motion ("Rebuttal") on October 11, 2011.  The Court conducted a hearing on the Motion to Reopen on October 12, 2011, at which both parties, by counsel, presented evidence and arguments.

At the conclusion of the hearing, the Court ordered Eisenbarth to prepare and file with the Court a proposed Complaint ("Proposed Complaint") within twenty (20) days of the hearing. The Court advised the parties that, after review of the Proposed Complaint, the Court would inform the parties if further argument would be necessary, but the Court would otherwise take the matter under advisement.  Eisenbarth timely filed the Proposed Complaint on November 1, 2011, which was reviewed by the Court.  The matter remained under advisement as no further argument was necessary.

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157(b) and

1334(b).   Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409(a).   This Memorandum

Opinion constitutes the findings of fact and conclusions of law of this Court.

## I.   Procedural History

Tracy B. Cutright (the "Debtor") filed a voluntary petition under Chapter 13 of the

United States Bankruptcy Code in this Court on January 16, 2008.   The Debtor voluntarily

converted his case to a proceeding under Chapter 7 on October 9, 2008.   Tom. C. Smith, Jr.

("Smith") was appointed Chapter 7 Trustee in the converted case.

On his Schedule A, filed on January 17, 2008, the Debtor listed 1820 Olympic Drive,

Virginia Beach, Virginia (the "Property").   Schedule A reveals no indication of joint ownership,

ownership by a marital community, or any other person or entity with an interest in the Property.

While the case was still pending under Chapter 13, a Motion for Relief From Stay as to the

Debtor and a co-debtor ("First Motion for Relief") was filed by CitiMortgage, Inc., on August

14, 2008, in which the movant sought relief to proceed against the Property, the Debtor, and the

co-debtor.   The First Motion for Relief named Jacqueline Cartwright[1] as the co-debtor.   Not

attached to the First Motion for Relief, however, were any supporting documents, such as the

Note and Deed of Trust.   After a preliminary hearing at which the parties announced that the

matter was settled as to the Debtor and the Court granted relief as to the co-debtor contingent

upon the ultimate lifting of the stay as to the Debtor, an Order Granting Modification of Stay was

entered on September 17, 2008, memorializing the agreement and the Court's ruling.

A subsequent Motion for Relief from Stay ("Second Motion for Relief") was filed by

Wachovia Bank, N.A., on September 22, 2008, as to the Property, the Debtor, and a co-debtor,

---

[1] The Court notes that the co-debtor's last name was misspelled in the First Motion for
Relief.

Jacquline Cutright.[2]  Like the First Motion for Relief, the Second Motion for Relief did not include any exhibits in support.  Prior to the preliminary hearing scheduled on the Second Motion for Relief, the case was converted to a proceeding under Chapter 7.

Following the conversion, the preliminary hearing on the Second Motion for Relief was held as scheduled on October 16, 2008, and a final hearing was scheduled for November 13, 2008.  In the interim, on October 27, 2008, Wachovia Bank, N.A., filed an Amended Motion for Relief from Stay ("Amended Motion for Relief"), and CitiMortgage, Inc., also filed a Motion for Relief from Stay ("Third Motion for Relief") to proceed against the Property in the newly converted case; both named Smith, the Chapter 7 Trustee, as a defendant.[3]  The Amended Motion for Relief was not accompanied by any supporting documents; however, the Third Motion for Relief attached a copy of a Note executed by the Debtor as well as a copy of the Deed of Trust granted on the Property by the Debtor and Jacqueline Cutright as joint tenants.  At the final hearing on the Amended Motion for Relief, relief was ordered as to the Debtor and the Court treated the matter as resolved as to Smith.  Subsequently, an Order Modifying Automatic Stay was entered on December 4, 2008, which memorialized the Court's ruling and the settlement with Smith.   The Third Motion for Relief was resolved by the parties via a consent order granting relief from stay entered on November 20, 2008.  However, the order was vacated by consent upon Smith's motion after Smith discovered there was equity in the Property that could be liquidated for the benefit of the estate.  As a result, an Amended Order Granting Modification of Stay ("Amended Order") as to the Third Motion for Relief was entered on

---

[2] The Court notes that the co-debtor's first name was misspelled in the Second Motion for Relief.

[3] As both the Amended Motion and Third Motion for Relief were filed in the Chapter 7 case, neither motion named a co-debtor as a defendant.

January 8, 2009.[4]

On November 21, 2008, Smith filed a Motion to Employ Agent seeking to employ Ed

Graybill ("Graybill") to represent the bankruptcy estate's interests in the sale of the Property,

which was granted by the Court.  Smith, as the seller, and Eisenbarth, as the buyer, entered into a

Real Estate Network, Inc. Standard Purchase Agreement ("Purchase Agreement"), dated

February 28, 2009, for the purchase of the Property.  Subsequently, Smith filed a Motion to Sell

the Property to Eisenbarth on March 10, 2009, which was granted by the Court by the Order

Granting the Motion to Sell entered on April 1, 2009.

When Smith executed the Purchase Agreement, he was unaware that anyone other than

the Debtor had any interest in the Property.  Response at 3.  Smith concedes that he did not read

all of the pleadings filed since the commencement of the case under Chapter 13 or review

anything that alleged Jacqueline Cutright's joint tenancy.  *Id.*  On cross examination at the

hearing held on October 12, 2011, Smith testified that he elected instead to rely upon

representations made to him by the Debtor and counsel for the Debtor, which led him to believe

the Debtor was the sole owner of the Property, as well as the Debtor's bankruptcy schedules,

which represented that the Debtor had an undivided interest in the Property.  Smith testified on

direct examination that he did not become aware of Jacqueline Cutright's interest until a title

search was performed subsequent to this Court's approval of the sale of the Property.  After

discovering Jacqueline Cutright's interest, Smith undertook steps to obtain her consent to the

---

[4] The Amended Order denied relief from the automatic stay subject to the following
conditions: (a) the Trustee would have until February 17, 2009, to market and obtain a ratified
contract for sale of the Property; (b) if such contract was obtained, the Trustee would have until
March 15, 2009, to close the transaction and tender funds to CitiMortgage, Inc., to satisfy the
outstanding balance of the loan; and (c) the sale would be subject to the deed of trust, payoff
would not require any further order of the Court, and no order would supersede the terms of the
Amended Order.  Smith Exh. 5, Amended Order.  If the Trustee failed either to timely obtain a
contract for sale of the Property or timely close the transaction and tender the full payoff amount
to CitiMortgage, Inc., relief from stay would be automatic.  *Id.*

sale. *Id.* Smith testified on direct examination that he did not have authority as trustee to sell

any interest in the Property other than the Debtor's absent consent from Jacqueline Cutright or

permission from the Court to force the sale of her interest under 11 U.S.C. § 363.   On cross-

examination, Smith testified that it was never his intention not to perform the terms of the

Purchase Agreement.

Graybill testified on direct examination by counsel for Smith that Eisenbarth located

Jacqueline Cutright in South Carolina after considerable effort by both Graybill and Eisenbarth

to determine her whereabouts.  Graybill further testified that he spoke with her about the issue

concerning the sale and sent via overnight delivery the documents necessary complete the sale.

Jacqueline Cutright responded the following day by letter dated June 2, 2009, stating that she

could not execute any documents because she believed she had not owned the Property since

2003.  *See* Smith Exh. 11.   After efforts to obtain Jacqueline Cutright's consent to sell her

interest in the Property failed, Smith determined that he did not have sufficient time to file and

prosecute a complaint with this Court to compel the sale of her interest given the imminence of a

scheduled foreclosure sale, at which Eisenbarth could and ultimately did attempt to purchase the

Property.[5]  Response at 3.  Eisenbarth concurred in his testimony on direct examination that a

forced sale of the property was not discussed as an alternative.  Eisenbarth further testified that,

based on information he received from Graybill that there was an impending foreclosure sale and

Smith had been unsuccessful in obtaining Jacqueline Cutright's consent to complete the sale, he

decided he would attempt to purchase the Property at the foreclosure sale.  Graybill also testified

---

[5] The Amended Order provided that relief would be automatic if Smith failed to obtain a ratified contract for sale of the Property by February 17, 2009.  Smith Exh. 5, Amended Order. The parties did not ratify the Purchase Agreement until March 12, 2009.  Eisenbarth Exh. 2, Purchase Agreement.  Thus, pursuant to the terms of the Amended Order, CitiMortgage, Inc., was entitled to exercise its right to foreclose upon its deed of trust on the Property following Smith's failure to timely procure a ratified contract for sale of the Property by February 17, 2009.

on direct examination by Smith's counsel that he (Graybill) and Eisenbarth discussed that, if they were unable to close the transaction, Eisenbarth would bid at the foreclosure sale.  The foreclosure sale at which Eisenbarth purchased the property was conducted on June 10, 2009, by Samuel I. White, P.C., on behalf of CitiMortgage, Inc. ("Foreclosure Sale").[6]  *See* Eisenbarth Exh. 5, Release of All Claims.

Smith ultimately learned of Eisenbarth's attempted purchase at the Foreclosure Sale through Graybill.  *Id.*  Eisenbarth testified on cross-examination that, when Graybill visited him at the Property, he informed Graybill that he had purchased the Property at the Foreclosure Sale and had hired contractors to begin work on the Property.  Based upon his belief that the Property had been sold to Eisenbarth at the Foreclosure Sale, Smith filed a Report of No Distribution on July 6, 2009, and the case was closed the following day.  Response at 4.

Although Eisenbarth placed the winning bid of $160,000.00 at the Foreclosure Sale, he testified on direct examination that he subsequently learned that the foreclosure was not on the first deed of trust.  As this fact was not clear at the time of the sale, the foreclosing lender ultimately returned the bidder's deposit to Eisenbarth in exchange for a release of all claims related to the Foreclosure Sale of the Property.  *See* Eisenbarth Exh. 5, Release of All Claims. Smith claimed he was unaware that Eisenbarth's purchase at the Foreclosure Sale failed to close until he received correspondence concerning Eisenbarth's proposed suit for breach of contract approximately two years later.  Response at 4.

Eisenbarth now seeks to reopen the bankruptcy case and to obtain leave to sue Smith in state court to recover compensatory damages from Smith personally in the approximate amount of $175,000.00 on a breach of contract theory.  *See* Proposed Complaint at 3.   In his

---

[6] The Court notes that Eisenbarth's wife, Magalis Eisenbarth, was a co-purchaser at the Foreclosure Sale.  *See* Eisenbarth Exh. 5, Release of All Claims.

Memorandum, Eisenbarth argues this Court should reopen the bankruptcy case and grant him leave to sue Smith in state court on the theory that Smith's execution of the Purchase Agreement was *ultra vires* because he lacked authority to sell Jacqueline Cutright's interest in the Property. Memorandum at 11. Eisenbarth further asserts that Smith may be held liable in his personal capacity for this act and that state court is the proper forum for the litigation. *Id.* In his Response, Smith defends on the basis that his actions were not *ultra vires* and he is immune from personal liability. Response at 14. Eisenbarth contends in his Rebuttal that Smith exceeded the scope of his authority as a trustee by contracting to sell property, specifically Jacqueline Cutright's interest in the Property, that was not property of the estate and, therefore, is exposed to liability in his personal capacity. Rebuttal at 5.

## II.  Findings of Fact and Conclusions of Law

### A.  The Motion to Reopen

Eisenbarth seeks to reopen the bankruptcy case so that he may obtain leave to sue Smith in state court. The Court may reopen a closed case to (1) administer assets, (2) accord relief to the debtor, or (3) for other cause. 11 U.S.C. § 350(b). However, notwithstanding the mere establishment by the moving party of any § 350(b) basis for reopening a case, the ultimate decision of whether to reopen a case rests within the bankruptcy court's sole discretion. *Hawkins v. Landmark Fin. Co.*, 727 F.2d 324, 326 (4th Cir. 1984); *Maryland Hotel Supply Co. v. Seats* (*In re Seats*), 537 F.2d 1176, 1177 (4th Cir. 1976); *In re Hardy*, 209 B.R. 371, 379 (Bankr. E.D. Va. 1997). A court should generally decline to exercise its discretion to reopen a case if to do so would be futile and a waste of judicial resources, given the circumstances of the case. *In re Carberry*, 186 B.R. 401, 402 (Bankr. E.D. Va. 1995). In *Horizon Aviation of Virginia, Inc. v. Alexander*, Judge Smith observed that there must be a compelling cause to justify reopening a bankruptcy case and concluded that "[t]here is no cause if reopening would serve no purpose."

*Horizon Aviation of Virginia, Inc. v. Alexander*, 296 B.R. 380, 382 (E.D. Va. 2003) (citing *Reid v. Richardson*, 304 F.2d 351, 355 (4th Cir. 1962); *In re Carberry*, 186 B.R. at 403). Consequently, if reopening a case would be futile because the moving party could not achieve the objective underlying the motion to reopen, the motion should be denied.[7] *In re Clary*, 440 B.R. 122, 123 (Bankr. E.D. Va. 2010); *see also In re Buker*, No. 05-14084-RGM, 2007 WL 3171951, at *1 (Bankr. E.D. Va. Oct. 26, 2007) (unreported decision) (opining that the court should deny a request to reopen if no additional relief could be granted by reopening the case); *In re Carberry*, 186 B.R. at 403 (denying the debtors' motion to reopen because nothing would be gained from reopening the case). A court's inquiry into the substance of the underlying relief sought by the moving party for the purpose of determining whether sufficient cause exists to justify reopening should not, however, devolve into a *de facto* ruling on the merits. *In re Jones*, 367 B.R. 564, 567 (Bankr. E.D. Va. 2007); *see also Lopez v. Specialty Rests. Corp.* (*In re Lopez*), 283 B.R. 22, 28 (B.A.P. 9th Cir. 2002) ("[T]he decision whether to reopen should not become a battleground for litigation of the underlying merits.").

Here, because Eisenbarth is neither a trustee seeking to administer assets nor a debtor seeking relief, and his purpose for seeking to reopen the bankruptcy case is to file suit against the Chapter 7 Trustee in state court, the only applicable basis to reopen under § 350(b) is "for other cause." The Court must determine if Eisenbarth has demonstrated cause sufficient for this Court to invoke its discretion to reopen the case.

---

[7] The Court notes that Judge Sonderby took a different approach to the evaluation of a motion to reopen filed in conjunction with a motion for leave to sue the bankruptcy trustee in state court, determining that the trustee's invocation of the *Barton* Doctrine, which requires the plaintiff to obtain permission from the bankruptcy court to sue the trustee in state court, was sufficient cause for the court to exercise its discretion to reopen a bankruptcy case. *See In re Weitzman*, 381 B.R. 874, 880 (Bankr. N.D. Ill. 2008). This approach, however, is inconsistent with the longstanding approach of the Fourth Circuit Court of Appeals to the evaluation of motions to reopen, as demonstrated by the cases cited above.

Notwithstanding the general rule that a court ought not make any determination as to the

merits of the underlying relief requested when evaluating whether sufficient cause exists to

warrant the reopening of a bankruptcy case, Eisenbarth's Motion is binary in that he prays not

only that the Court reopen the bankruptcy case for the purpose of obtaining leave to sue Smith in

state court, but also that the Court grant that underlying relief.[8]   Thus, it would be needlessly

dogmatic for the Court to disregard the practical implications of the Court's ultimate decision as

to the underlying relief on the question of the futility of the motion to reopen.  For the reasons

stated below, the Court finds that reopening the bankruptcy case would serve no purpose because

Eisenbarth's request for leave to sue Smith in state court must be denied.  Therefore, the motion

to reopen must be denied.

### B.  The Motion for Leave to Sue

In his Motion, Eisenbarth requests this Court's permission to file suit against Smith in

state court in accordance with the *Barton* Doctrine.  The *Barton* Doctrine is derived from the

United States Supreme Court's decision in *Barton v. Barbour*, 104 U.S. 126 (1881).  Under the

*Barton* Doctrine, a potential plaintiff must obtain permission from the bankruptcy court before

filing suit against a bankruptcy trustee in another forum for acts done in the trustee's official

capacity and within the trustee's authority.  *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir.

2012).  The Fourth Circuit Court of Appeals has recognized that the requirement established by

---

[8] Eisenbarth's Motion is entitled "Motion to Reopen Case *and* to Obtain Leave of Court for Dell L. Eisenbarth to File Suit Against Trustee Tom C. Smith in State Court" (emphasis added) wherein he prays "that the case be reopened, that he be granted leave of Court to file suit against Trustee Tom C. Smith in State Court, and that he be granted such further and general relief as the ends of justice may require." Motion at 1.  The Court has jurisdiction to decide the merits of the underlying relief pursuant to *Barton v. Barbour*, 104 U.S. 126 (1881), which requires a potential plaintiff to obtain leave of the bankruptcy court before filing suit against a trustee in another forum for acts done in the trustee's official capacity and within the trustee's authority. *McDaniel v. Blust*, 668 F.3d 153, 157 (4th Cir. 2012); *Gordon v. Nick*, No. 96-1858, 1998 WL 559734, at *2 (4th Cir. Sept. 2, 1998).

the United States Supreme Court in *Barton*, which required such permission in the context of receiverships, has been extended to suits against bankruptcy trustees. *Id.* By providing this protection to trustees acting in their official capacity, the *Barton* Doctrine promotes the principles and practicalities that underlie trusteeship:

> [A] bankruptcy trustee "is an officer of the court that appoints him," and therefore that court "has a strong interest in protecting him from unjustified personal liability for acts taken within the scope of his official duties." *Lebovits v. Scheffel* (*In re Lehal Realty Assocs.*), 101 F.3d 272, 276 (2d Cir. 1996). "Without the requirement [of obtaining leave], trusteeship w[ould] become a more irksome duty, and so it w[ould] be harder for courts to find competent people to appoint as trustees. Trustees w[ould] have to pay higher malpractice premiums, and this w[ould] make the administration of the bankruptcy laws more expensive." *In re Linton*, 136 F.3d 544, 545 (7th Cir. 1998). The doctrine also enables bankruptcy courts to monitor the work of the trustees they have appointed so that the courts may be fully informed when they make future appointments. *See id.*

*Id.*

If a trustee's acts fall within the scope of the protections of the *Barton* Doctrine, a non-appointing forum lacks subject matter jurisdiction over a suit against the trustee absent leave from the appointing court. *Id.* at 156; *Kashani v. Fulton* (*In re Kashani*), 190 B.R. 875, 884 (B.A.P. 9th Cir. 1995). A trustee is only entitled to the protections afforded under the *Barton* Doctrine for "acts done in his official capacity and within his authority as an officer of the court." *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967). Accordingly, an exception to the *Barton* Doctrine for acts undertaken outside a trustee's official capacity "is inherent in the *Barton* Doctrine itself."[9] *Katz v. Kucej* (*In re Beibel*), No. 08-3115, 2009 WL 1451637, at *5

---

[9] Additionally, there exists an express statutory exception to the *Barton* Doctrine found in 28 U.S.C. § 959(a), which permits suits against trustees without leave of court "with respect to any of their acts or transactions in carrying on business connected with such property." This exception has been construed narrowly such that "the exception does not apply to suits against the trustee for actions taken while administering the estate." *In re McKenzie*, No. 08-16378, 2011 WL 3439081, at *7 (Bankr. E.D. Tenn. Aug. 5, 2011) (slip copy) (quoting *Allard v. Weitzman* (*In re DeLorean Motor Co.*), 991 F.2d 1236, 1241 (6th Cir. 1993)). This exception contemplates "pursuing [the debtor's] business as an operating enterprise," not the duties of

(Bankr. D. Conn. May 20, 2009) (unreported decision). To determine if the *Barton* Doctrine applies to a suit arising out of an act by a trustee, "courts consider the nature of the function the trustee or his counsel was performing during the commission of the actions for which liability is sought." *McDaniel*, 668 F.3d at 157. To illustrate, leave of the bankruptcy court is required to bring suit against a trustee for acts "within the context" of his duty to "recover[] assets of the estate." *Id.* (quoting *Heavrin v. Schilling* (*In re Triple S Rests., Inc.*), 519 F.3d 575, 578 (6th Cir. 2008)). If the *Barton* Doctrine applies and leave is required to bring suit in a non-appointing forum, the bankruptcy court must determine whether the requested leave should be granted. The decision whether to grant leave to sue is "within the sound discretion of the appointing court." *In re McKenzie*, 2011 WL 3439081, at *7 (citing *In re Kashani*, 190 B.R. at 881).

Thus, the Court's inquiry is as follows: 1) does the *Barton* Doctrine apply such that Eisenbarth is required to obtain leave of this Court to file his proposed suit against Smith in state court, and 2) if leave is required pursuant to the *Barton* Doctrine, should leave be granted?

### 1. Does the *Barton* Doctrine apply?

The threshold issue before the Court is whether Eisenbarth is required to obtain leave of this Court to file his proposed suit against Smith in state court. Critical to the Court's determination of this issue is the inherent exception to the *Barton* Doctrine, which would operate to deny Smith the protections of the *Barton* Doctrine if the actions complained of were not taken in his official capacity or exceeded his authority. Courts have held that a suit premised upon allegations that a trustee engaged in conduct that is intentional, wrongful, or even illegal does not remove it from the scope of the trustee's duties and authority so as to defeat the applicability of

---

collection, liquidation, and preservation of the debtor's assets. *Muratore v. Darr*, 375 F.3d 140, 144 (1st Cir. 2004); *see also Gordon v. Nick*, No. 96-1858, 1998 WL 559734, at *2 (4th Cir. Sept. 2, 1998). This exception is inapplicable to the facts at hand, and the parties do not contend that it applies.

the *Barton* Doctrine when the conduct is connected to the trustee's execution of his official duties. *See, e.g.*, *Satterfield v. Malloy*, No. 10-CV-03-TCK-FHM, 2011 WL 2293940, at *4 (N.D. Okla. June 8, 2011) (slip copy) (declining to adopt the theory that unlawful or improper acts necessarily exceed the bounds of a trustee's authority). The *Satterfield* court rejected the plaintiff's argument that the trustee's alleged improper and unlawful acts of retaliatory dissipation of estate assets could necessarily be characterized as unofficial or in excess of the trustee's authority, and instead focused not on the alleged acts alone, but also on the relationship between the acts complained of and the trustee's official duties. *Id.* The court held that the trustee's actions were not *ultra vires* because they were undertaken while administering and liquidating the estate, and the essence of the plaintiff's allegations related to the trustee's execution of those duties. *Id.* (citing *Lawrence v. Goldberg*, 573 F.3d 1265, 1271 (11th Cir. 2009)).

Likewise, in *McDaniel*, the Fourth Circuit examined whether the trustee's counsel's alleged misuse of false corporate tax returns and wrongful receipt and possession of personal income tax returns exceeded the scope of their authority as trustee's counsel in an adversary proceeding. *McDaniel*, 668 F.3d at 156. The Fourth Circuit affirmed the lower court's holding that the alleged wrongful conduct did not preclude application of the *Barton* Doctrine. *Id.* at 157. The court's reasoning hinged on the fact that the alleged actions "were taken in the context of attempting to prove the adversary action." *Id.* The court also rejected the appellants' contention that leave of the bankruptcy court was not required since the conduct of the trustee's counsel was allegedly intentional and fraudulent, and instead found that the alleged misconduct added further support to the application of the *Barton* Doctrine because bankruptcy courts must be "kept in the loop" regarding intentional misconduct within the pool of appointees. *Id.* at 158.

The Sixth Circuit has considered whether the *Barton* Doctrine applied to a suit for

12

intentional infliction of emotional distress and sanctions arising out of a trustee's threat to refer the debtor's former general counsel for criminal investigation to induce him enter into a settlement for the benefit of the estate. *In re Triple S Rests., Inc.*, 519 F.3d at 578. The court affirmed the bankruptcy court's decision that the trustee acted within the scope of his authority, and thus leave of the bankruptcy court was required, "because the [settlement] negotiations were within the context of recovering assets for the estate." *Id.*

Other courts have held that a trustee who actually seizes or possesses property that is not property of the estate has exceeded his authority and a plaintiff is not required to seek the bankruptcy court's approval to file suit against a trustee in that circumstance. *See, e.g.*, *Teton Millwork Sales v. Schlossberg*, 311 F. App'x 145, 148 (10th Cir. Feb 10, 2009); *Leonard v. Vrooman*, 383 F.2d 556, 560 (9th Cir. 1967); *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 851 (Bankr. N.D. Ill. 2000); *Schechter v. State of Illinois Dep't of Revenue* (*In re Markos Gurnee P'ship*), 182 B.R. 211, 217 (Bankr. N.D. Ill. 1995). In *Teton Millwork Sales*, the Tenth Circuit Court of Appeals considered whether subject matter jurisdiction existed over a suit filed by a corporation against a court-appointed receiver, claiming that the receiver, who was authorized to seize the assets of a husband in a state court divorce proceeding, exceeded the scope of his authority by seizing all of the assets of the corporation in which the husband was only a twenty-five percent shareholder. *Teton Millwork Sales*, 311 F. App'x at 147. The court held that the *Barton* Doctrine did not apply to the suit against the receiver because the corporation's allegations that the receiver wrongfully seized its assets brought the case "squarely within [the] *ultra vires* exception to the *Barton* Doctrine . . . ." *Id.* at 148. Similarly, in *Leonard*, the Ninth Circuit Court of Appeals concluded that a state court plaintiff did not need to obtain prior leave of the appointing court to bring suit against a bankruptcy trustee who broke into and seized possession of real property owned by a third party without first obtaining a court order,

notwithstanding the trustee's belief that the property was the subject of a pre-petition preferential transfer by the debtor.   *Leonard*, 383 F.2d at 560.

Turning to whether the *Barton* Doctrine applies in the instant matter, the Court must first determine whether Eisenbarth's claim arises out of actions taken within Smith's official capacity and within the scope of his authority.   In his Memorandum, however, Eisenbarth begins his analysis by framing the initial issue as "whether Smith's actions are protected by immunity." Memorandum at 6.   He then proceeds to argue that Smith is not entitled to qualified judicial immunity because his actions were *ultra vires*, thereby subjecting Smith to personal liability.   *Id.* at 8-9.   In support of his argument, Eisenbarth relies on authority in which courts considered the issue of qualified judicial immunity in the context of determining the extent of a trustee's liability to a plaintiff.   *Id.* at 6-9.   Eisenbarth's statement of the initial issue and his related argument misapprehends the nature of this Court's initial inquiry.   Judge Weil reminds of the distinction between the application of the *Barton* Doctrine and the issue of quasi-judicial immunity: "The *Barton* Doctrine is jurisdictional.   Quasi-judicial immunity is substantive.   They are not the same thing."   *Katz v. Kucej* (*In re Beibel*), No. 08-3115, 2009 WL 1451637, at *6, n.18 (Bankr. D. Conn. May 20, 2009) (unreported decision).   The *Barton* Doctrine pertains to "*where* the Trustee may be sued (i.e., in this court only), not *whether* she may be sued."[10]   *Id.* at

---

[10] The two issues the Court must decide in the instant matter are 1) whether the *Barton* Doctrine is applicable, and 2) if the *Barton* Doctrine applies, whether to grant Eisenbarth leave to bring suit against Smith in state court.   Smith's entitlement, or lack thereof, to derived judicial immunity is wholly irrelevant to the issue of whether Eisenbarth must obtain leave to sue Smith in state court, and relevant only as one of a number of factors on the issue of whether leave, if required, should be granted.   Although the question of whether Smith's actions were *ultra vires* is relevant both to the applicability of the *Barton* Doctrine and the extent of Smith's ultimate liability, Eisenbarth initially presents his allegations that Smith's actions were *ultra vires* in the substantive context of liability, rather than within the jurisdictional context of application of the *Barton* Doctrine.   *See* Memorandum at 6-9.   Smith likewise addresses the issue of whether he exceeded his authority in the context of the substantive issue of derived judicial immunity.   *See* Response at 10-14.

*6 (emphasis in original).

In light of Eisenbarth's apparent misapprehension as to the Court's initial inquiry, the Court will focus on the substance of Eisenbarth's allegations, that Smith exceeded the scope of his authority as trustee by entering into the Purchase Agreement, within the context of the jurisdictional issue before the Court.  Eisenbarth argues that Smith exceeded his powers as trustee because Smith had not obtained authority from the Court to contract to sell Jacqueline Cutright's interest in the Property.  Memorandum at 8.  Smith defends on the notion that the Purchase Agreement directly related to his duty to liquidate the estate's assets, despite the fact the estate had only a partial interest in the Property.  Response at 12.  In his testimony, Smith did

---

In a separate argument, Eisenbarth again contends that Smith's actions were *ultra vires*, arguing that Smith's actions exceeded the scope of his authority such that this Court lacks subject matter jurisdiction over his claims on the basis that they do not constitute a "core proceeding" or a proceeding "related to" a proceeding in the bankruptcy case.  Memorandum at 10.  However, the threshold jurisdictional issue presented by the *Barton* Doctrine addresses whether permission of the bankruptcy court must be obtained to vest *another forum* with jurisdiction over a suit against a trustee, which is distinct from the issue of whether Eisenbarth's alleged underlying claim constitutes a "core proceeding" or is "related to" a proceeding in a bankruptcy case such that a bankruptcy court could exercise jurisdiction over it.  Instead, whether the proposed claims constitute a "core proceeding" or a proceeding "related to" a bankruptcy is among the factors relevant to the subsequent issue of whether leave, if required, should be granted.  *See In re Kashani*, 190 B.R. at 886.  It is axiomatic that if leave of the bankruptcy court is unnecessary, then a court need not reach the question of whether the claims are core or "related to" the bankruptcy case.  Thus, Eisenbarth's argument that Smith's actions were *ultra vires*, thereby rendering the claims non-core and unrelated to the bankruptcy proceeding, also fails to squarely address the initial issue of whether leave of court must be obtained under *Barton*.

Accordingly, Eisenbarth has not presented his allegation that Smith acted *ultra vires* within the jurisdictional context of the *Barton* Doctrine.  However, the Court will not construe the absence of direct argument on the applicability of the *Barton* Doctrine as a concession by Eisenbarth that the *Barton* Doctrine applies given that, in his Motion, Eisenbarth argues in substance that Smith's actions exceeded the scope of his authority.  If Smith's actions did in fact exceed the scope of his authority, as Eisenbarth contends in various other contexts, then leave of of this Court would not be required under the *Barton* Doctrine.  The Court will therefore apply the substance of Eisenbarth's allegations that Smith's actions were *ultra vires* to the jurisdictional issue at hand.

not dispute that he lacked authority to sell any interest in the Property other than that of the
Debtor, that he represented in the Purchase Agreement that he would convey the Property to
Eisenbarth in fee simple, or that he was unable to make the conveyance as agreed after becoming
aware of Jacqueline Cutright's tenancy.   However, as the *Satterfield* and *McDaniel* courts
observed, even if Smith's conduct could be characterized as negligent, wrongful, or improper,
portraying Smith's actions as such does not equate to a transgression of his authority.   Focusing
instead on the nature of the function Smith was performing at the time the conduct occurred, the
Court notes that Smith was not acting pursuant to a court order when the parties entered into the
Purchase Agreement, which was executed prior to the filing of the Motion to Sell and, further,
was contingent upon this Court's approval of the sale.   Rather, Smith's entry into the Purchase
Agreement occurred within the context of his duty as trustee to liquidate assets of the estate
pursuant to 11 U.S.C. § 704(a)(1).   Because the execution of the Purchase Agreement was
undertaken by Smith in furtherance of his statutory duties as trustee, the assertion that Smith
misrepresented his power to convey full title to the Property on behalf of the estate and the
alleged breach of the Purchase Agreement that resulted therefrom arise from Smith's exercise of
his statutory duties.   Thus, the Court concludes as a matter of law that the alleged breach of the
Purchase Agreement by Smith by reason of the alleged misrepresentations pertains to his attempt
to liquidate the Property, in which the estate held an interest.

Furthermore, the instant facts do not present the Court with a case of seizure or
possession of property of a third party that was not property of the estate, or any equivalent act of
control, which would exemplify the limited circumstances in which courts have held that a
trustee's actions were *ultra vires* such that prior leave of the appointing court was unnecessary.
Smith's overstatement of the extent of the estate's interest in the Property in the Purchase
Agreement does not amount to actual seizure, possession, or control of the property of a third

party, which was present in both *Leonard* and *Teton Millwork Sales*. Smith did not consummate the sale of the Property and, therefore, it is distinguishable from the factual scenarios where courts have found that a trustee exceeded his authority. Instead, after becoming aware of Jacqueline Cutright's tenancy, Smith attempted to obtain her consent to sell her interest, but failing in his efforts to do so, and in light of the imminent Foreclosure Sale scheduled for the Property, Smith did not sell any interest in the Property. Thereafter, Eisenbarth pursued an alternative avenue to acquire the Property by bidding at the Foreclosure Sale. At no time in the course of executing his duty to liquidate assets of the estate did Smith in any way interfere with Jacqueline Cutright's alleged joint ownership right in the Property. Thus, the Court rejects Eisenbarth's argument and finds that Smith's execution of the Purchase Agreement did not equate to seizure, possession, or control over Jacqueline Cutright's alleged interest in the Property, and that the Purchase Agreement was executed by Smith within the context of liquidating an asset of the estate pursuant to his statutory duties.

The Court, therefore, finds that Smith acted within the scope of his authority and concludes that leave of this Court is required to bring the proposed suit against Smith in state court.

2. Should the Court grant Eisenbarth leave to bring suit against Smith in state court?

While the Fourth Circuit has considered the issue of the applicability of the *Barton* Doctrine to a suit against a bankruptcy trustee, the Fourth Circuit has not yet reached the issue of the conditions under which leave to sue a trustee should be granted. Many courts across various other circuits that have addressed the issue of whether leave to sue should be granted have adopted the two-tiered analysis first articulated by the Bankruptcy Appellate Panel for the Ninth Circuit in *Kashani v. Fulton* (*In re Kashani*), 190 B.R. 875 (B.A.P. 9th Cir. 1995). *See, e.g.*, *Beck v. Fort James Corp.* (*In re Crown Vantage*), 421 F.3d 963, 976-77 (9th Cir. 2005); *Strand*

*v. Loveridge*, No. 2:07-cv-00576-DAK, 2008 WL 893004, at *3-4 (D. Utah Mar. 28, 2008)

(unreported decision); *In re McKenzie*, No. 08-16378, 2011 WL 2975869, at *5-9 (Bankr. E.D.

Tenn. July 21, 2011) (slip copy); *In re Eerie World Entm't, LLC*, No. 00-13708, 2006 WL

1288578, at *9-10 (Bankr. S.D.N.Y. Apr. 28, 2006) (unreported decision); *In re Krikava*, 217

B.R. 275, 279 (Bankr. D. Neb. 1998).  *But see In re VistaCare Group, LLC*, No. 11-2695, 2012

WL 1563924, at *12 (3d Cir. May 4, 2012) (citing *In re Nat'l Molding Co.*, 230 F.2d 69, 71 (3d.

Cir. 1956)) (holding that the court need only be satisfied that the proposed state court claim is

"not without foundation").

The first hurdle a prospective plaintiff must overcome to obtain leave to sue from the

appointing court is the establishment of a *prima facie* case against the trustee.  *In re Kashani*,

190 B.R. at 885.  Second, where the *prima facie* case requirement is satisfied, the *Kashani* court

sets forth a roadmap designed to balance the interests of the parties in determining whether leave

should be granted to sue the trustee in another forum.  *Id.* at 886-87.

The *prima facie* case requirement requires a "pre-screening" of the allegations by the

appointing court to determine if the plaintiff can present adequate grounds upon which to

proceed against the trustee in another forum.  *Id.* at 885.  The plaintiff must provide information,

by presenting either a "detailed motion or complaint," sufficient to enable the court to determine

whether a *prima facie* case has been established.[11]  *Id.*  It is within the court's discretion to

---

[11] To be sure, an expansive approach was taken with respect to the *prima facie* case
requirement in *In re Weisser Eyecare*, where the court integrated a trustee's entitlement to quasi-
judicial immunity into its determination of whether the prospective plaintiff set forth a *prima
facie* case.  *In re Weisser Eyecare, Inc.*, 245 B.R. 844, 848 (Bankr. N.D. Ill. 2000) (holding that,
because the trustee was immune from personally liability, the movant failed to plead the
elements of a *prima facie* case and the motion for leave to sue the trustee should be denied).  In
his Response, Smith likewise argues, consistent with reasoning in *In re Weisser Eyecare*, that
Eisenbarth cannot establish a *prima facie* case because Smith is immune from personal liability.
Response at 5.  However, this Court believes the *prima facie* case requirement must be
constrained to an evaluation of the elements of the prospective plaintiff's cause of action against

request that the prospective plaintiff to submit a proposed complaint as a supplement if the motion filed is not sufficiently detailed.  *Id.*

At the Court's order, Eisenbarth provided a complaint he proposes to file in state court in Virginia wherein he seeks to recover damages from Smith in his personal capacity pursuant to a breach of contract theory.  Proposed Complaint at 1.  Under Virginia law, "[t]he elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation."  *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004).  In his Proposed Complaint, Eisenbarth pleads the following facts: (1) Eisenbarth, as the buyer, and Smith, as the seller, entered into the Purchase Agreement for the Property on March 11, 2009; (2) Smith violated his obligation under the contract to transfer title to the Property free and clear of all liens and tenancies because he did not have consent to transfer the interest of the joint tenant, Jacqueline Cutright, while Eisenbarth was prepared to perform under the terms of the contract; and (3) Smith's breach resulted in damages, both expectation and consequential, to Eisenbarth.  Proposed Complaint at 1-2.  Thus, it appears from the face of the proposed state court complaint, that Eisenbarth has set forth a *prima facie* case.

Having found that Eisenbarth has satisfied the *prima facie* case requirement, the Court will undertake the second layer of the analysis espoused in *Kashani* in order to balance the interests of all parties involved.  Being mindful of the legal complexities, practicalities, and

---

the trustee.  This Court declines to combine the issues because the question of whether the plaintiff has stated the elements of a *prima facie* case focuses on whether the party seeking affirmative relief has presented sufficient facts to establish the elements of his claim, whereas immunity from liability would be a possible defense for a trustee to raise in opposition to a plaintiff's claim.  Moreover, given that the *Kashani* court includes potential quasi-judicial immunity as a factor in the court's analysis subsequent to the initial "pre-screening," *Kashani*, 190 B.R. at 886, this Court is further persuaded that quasi-judicial immunity should not be considered at the first stage in the analysis.

policies implicated by a suit against a bankruptcy trustee, the *Kashani* court astutely observed

that, even when the *prima facie* case requirement is satisfied, the bankruptcy court, in exercising

its discretion, must have a mechanism to evaluate the appropriateness of litigating the suit

outside the bankruptcy court. *Kashani*, 190 B.R. at 886-87. The *Kashani* considerations

guiding the Court's analysis at this stage are as follows:

1. Whether the acts or transactions relate to the carrying on of the business connected with the property of the bankruptcy estate. If the proceeding is under 28 U.S.C. § 959(a), then no court approval is necessary. However, the moving party may request this initial review by the bankruptcy court in the motion for leave to sue the trustee, or perhaps in the form of a complaint, seeking a declaratory judgment from the bankruptcy court.

2. If approval from the appointing court appears necessary, do the claims pertain to actions of the trustee while administering the estate? By asking this question, the court may determine whether the proceeding is a core proceeding or a proceeding which is related to a case or proceeding under Title 11, United States Code. *In re Jacksen*, 105 B.R. 542, 544 (B.A.P. 9th Cir. 1989).

3. Do the claims involve the individual acting within the scope of his or her authority under the statute or orders of the bankruptcy court, so that the trustee is entitled to quasi-judicial or derived judicial immunity?

4. Are the movants or proposed plaintiffs seeking to surcharge the trustee; that is, seeking a judgment against the trustee personally?

5. Do the claims involve the trustee's breaching her fiduciary duty either through negligent or willful misconduct?

*Id.* Any one factor or combination of factors may be determinative, depending upon the specific

facts. *Id.* at 887.

> a. Is the exception under 28 U.S.C. § 959(a) applicable?

The first factor relates exclusively to the exception to the *Barton* Doctrine created by 28

U.S.C. § 959(a). *In re McKenzie*, 2011 WL 2975869, at *6. Pursuant to § 959(a), prior leave of

the bankruptcy court is not required in a suit arising from "any of [the trustee's] acts or

transactions in carrying on business connected with such property." The Court has already

determined that this exception is inapplicable to the instant facts, and neither party contends it applies.  *See* n.9, *supra*.

    b.  Does Eisenbarth's claim pertain to the actions of Smith while administering the estate?

        Eisenbarth's proposed breach of contract claim pertains to Smith's actions while administering the estate, which favors denial of Eisenbarth's motion.   The Court's earlier analysis regarding the applicability of the *Barton* Doctrine contributes to the analysis of the second consideration under *Kashani*, which requires the Court to consider the duties of the trustee outlined in 11 U.S.C. § 704 to determine whether the prospective plaintiff's claims pertain to the trustee's statutory duties.  *See In re McKenzie*, 2011 WL 2975869, at *7-8.  Claims arising from actions taken by a trustee as to non-estate property pertains to estate administration when such action is connected to a trustee's sale of estate property.  *See Strand*, 2008 WL 893004, at *4.   In *Strand*, the prospective plaintiff sought leave to file state law tort claims against a bankruptcy trustee arising out of the trustee's alleged noncompliance with an order of the bankruptcy court that directed return of and excluded from sale certain items of personal property belonging to the plaintiff.  *Id.* at *1-2.  The court held that, because the claims arose from "the trustee's conduct in taking control of [the prospective plaintiff's] personal property along with the property of the estate and in selling the property of the estate," the claims pertained to the trustee's administration of the estate, thereby satisfying the second *Kashani* factor.  *Id.* at *4.  Here, like the plaintiff in *Strand* whose claims concerned a trustee's actions as to non-estate property in the course of the liquidation of property of the estate, Eisenbarth's breach of contract claim concerns representations made in the Purchase Agreement that Smith had the power to transfer fee simple title to the Property, when, in fact, the estate held a half-interest and the remaining interest was allegedly held by Jacqueline Cutright, a non-debtor. Additionally, like in *Strand*, although the terms of Purchase Agreement encompassed Jacqueline

Cutright's alleged interest, because Smith's execution of the Purchase Agreement pertained to his liquidation of the Property in which the estate also held an interest, Eisenbarth's claims relate to administration of the bankruptcy estate.[12]  Thus, because Eisenbarth's claims arise out of the Purchase Agreement, which was executed in connection with Smith's duty to administer property of the estate, the Court resolves the second *Kashani* factor in the affirmative, which weighs in favor of denying Eisenbarth leave to sue Smith in state court.

   c.  Did Smith act within the scope of his authority such that he would be entitled to quasi-judicial immunity or derived judicial immunity?

   The doctrine of quasi-judicial or derived judicial immunity affords immunity from suit to a trustee who acts within the scope of his authority by virtue of his status as an officer of the court.  *Kirk v. Hendon* (*In re Heinsohn*), 231 B.R. 48, 62 (Bankr. E.D. Tenn. 1999).  A court

---

[12] In evaluating the second *Kashani* consideration, a court has the discretion to consider whether the proposed proceeding is a core proceeding or a proceeding related to the bankruptcy proceeding.  *In re Kashani*, 190 B.R. at 886.  In his argument, Eisenbarth submits that his claims against Smith are neither core nor related to the bankruptcy proceeding because Smith "strayed outside the bankruptcy estate and attempted to deal in non-estate property."  Memorandum at 10. Eisenbarth relies largely on *Welt v. MJO Holding*, 212 F. App'x 811 (11th Cir. 2006), arguing that his claims against Smith are analogous to the claims against the trustee in *Welt*, which the court held were non-core and not related to the bankruptcy proceeding because they arose from the trustee's closure of a pawn shop business under the erroneous belief it contained inventory belonging to the debtor when, in fact, the estate had no interest in the business or its property. *Welt*, 212 F. App'x at 813.  In *Welt*, the court's reasoning hinged primarily on the requirement that "a core proceeding must always implicate the property of the bankrupt estate."  *Id.* at 817.

   Here, however, Eisenabarth's state law breach of contract claim stems from the Purchase Agreement by which, notwithstanding Smith's representations concerning the extent of the estate's interest, Smith contracted to sell an asset in which the estate unquestionably held an interest.  Claims against a bankruptcy trustee that are "inextricably intertwined with the trustee's sale of property belonging to the bankruptcy estate" constitute core proceedings.  *See Maitland v. Mitchell* (*In re Harris Pine Mills*), 44 F.3d 1431, 1437-38 (9th Cir. 1995) (noting that the majority of courts treat claims arising out of a trustee's sale of property of the estate as core proceedings).  Thus, that the contemplated sale in the instant case involved property that was property of the bankruptcy of the estate is a critical distinction.   Because the transaction that forms the basis for Eisenbarth's claim arose within the course of Smith's administration of property of the bankruptcy estate, the Court is not persuaded by Eisenbarth's argument that his claims against Smith are non-core.

applies the immunity analysis only when a suit is brought against a trustee by a third party, as

opposed to a debtor or creditor who are beneficiaries with protected interests in the bankruptcy

estate.  *Id.* at 65 (citing Daniel B. Bogart, *Liability of Directors of Chapter 11 Debtors in*

*Possession: "Don't Look Back – Something May Be Gaining On You,"* 68 Am. Bankr. L.J. 155,

204-05 (Spring 1994)).  When faced with a suit against a trustee, it is crucial for courts to

distinguish between "scenarios requiring a fiduciary analysis with those requiring immunity

analysis."  Bogart, *supra*, at 206.  A fiduciary analysis is required to determine the extent of a

trustee's liability in a suit brought by a beneficiary of the bankruptcy estate (i.e., the debtor, the

debtor's shareholders, and the creditors), which is based upon the standards of care a trustee

owes to the beneficiaries as a fiduciary.  *Id.* at 202.  Under the fiduciary analysis, a court must

focus on whether a trustee has breached his fiduciary obligations due to negligence or willful

misconduct in the execution of his statutory duties.[13]  *See In re Heinsohn*, 231 B.R. at 65, n.10.

The *Kashani* factors, by referring separately the concepts of quasi-judicial or derived judicial

immunity (the third factor) and breach of fiduciary duty (the fifth factor), observe the distinction

between a suit by a non-beneficiary versus a beneficiary.  However, confusion abounds in the

case law regarding trustee liability because courts have applied the immunity analysis in cases

requiring a fiduciary analysis, and vice versa.  Bogart, *supra*, at 206.

 The Fourth Circuit has only addressed the question of a bankruptcy trustee's potential

liability in the context of suits by beneficiaries of the bankruptcy estate, which required

application of the fiduciary analysis.  In evaluating a trustee's liability to beneficiaries of the

bankruptcy estate in the *Yadkin* line of cases, the Fourth Circuit applied a modified version of the

---

[13] Although there is a split in authority among the circuit courts as to the extent of a
trustee's liability based upon the nature of the breach, the Fourth Circuit has held a trustee is
liable in his official capacity for negligence and liable in his personal capacity for willful or
deliberate violations of his duties.  *See Yadkin Valley Bank & Trust Co. v. McGee* (*In re
Hutchinson*), 5 F.3d 750, 752-53 (4th Cir. 1993).

framework set forth in *Sherr v. Winkler*, 552 F.2d 1367 (10th Cir. 1977), and focused its analysis

on whether the trustee had acted negligently in carrying out her duty to liquidate an estate asset.

*See Yadkin Valley Bank & Trust Co. v. McGee* (*In re Hutchinson*), 5 F.3d 750, 753-57 (4th Cir.

1993) ("*Yadkin III*"); *Yadkin Valley Bank & Trust Co. v. McGee* (*In re Hutchinson*), 819 F.2d 74,

76 (4th Cir. 1987) ("*Yadkin I*").   The Fourth Circuit again engaged in a fiduciary analysis of

liability in *McGahren v. First Citizens Bank & Trust Co.* (*In re Weiss*), 111 F.3d 1159 (4th Cir.

1997), where the court rejected the beneficiary's argument that the trustee could be held

personally liable for acting outside the scope of her duties.   *In re Weiss*, 111 F.3d at 1169.   The

Court reiterated that it could hold the trustee personally liable to the beneficiary only for willful

or deliberate misconduct.   *Id.*

Eisenbarth is a third party non-beneficiary of the bankruptcy estate as his connection to

the bankruptcy estate arose only by virtue of his attempt to purchase the Property.   *See Meronk v.

Arter & Hadden, LLP* (*In re Meronk*), 249 B.R. 209, 214 (B.A.P. 9th Cir. 2000) (observing that

debtors and creditors are the beneficiaries of the bankruptcy estate as they may participate in the

ultimate distribution of estate property pursuant to 11 U.S.C. § 726).   As a result, the fiduciary

analysis applied by the Fourth Circuit in the *Yadkin* line of cases and *In re Weiss* is inapplicable

to the instant facts.   Instead, the instant matter calls for the immunity analysis such that the

appropriate question to ask is *not* whether Smith acted negligently or engaged in willful

misconduct in his execution of his duties as trustee, but only whether he acted within the scope

of his authority; if so, he would be entitled to quasi-judicial or derived judicial immunity.

However, arguments advanced by both Smith and Eisenbarth demonstrate a misunderstanding of

the Fourth Circuit case law and the liability analysis applicable to the instant facts.

Smith's argument that he is immune from liability in his personal capacity fails to

recognize that the instant facts present an immunity scenario and incorrectly applies the fiduciary

standard of liability, contending that he cannot be held personally liable because his conduct was not a willful and deliberate violation of his duties.  *See* Response at 8.  Even though Eisenbarth correctly recognizes that "the 'willful and deliberate' standard on which Smith relied is inapplicable in the instant case,"  he reaches that conclusion for the wrong reason, as he further submits that "[the 'willful and deliberate standard'] applies only in those cases, distinguishable from the facts at bar, where the Trustee takes a discretionary act under direct orders of court . . . . [H]ere, the trustee has entered into an *ultra vires* contract."  Memorandum at 6.  As summarized *supra*, however, the "willful and deliberate" standard is inapplicable here because it applies only to suits brought against trustees by beneficiaries of the bankruptcy estate, which Eisenbarth is not.

Both parties also misconstrue the import of the *Yadkin* line of cases as it relates to the analysis demanded by the instant facts.  Smith observes that an *ultra vires* exception to immunity "does not appear in the Fourth Circuit's standard for trustee immunity."   Response at 10.  Further, Eisenbarth initially characterizes the *Yadkin* line of cases as standing for the proposition that "a Trustee can be held personally liable for acting beyond his powers."  Memorandum at 7.

The Fourth Circuit clearly recognized in *Yadkin I* that a trustee will be exposed to individual liability for acts in excess of his authority.  *Yadkin I,* 819 F.2d at 76.  However, this was not the basis for the holding in the *Yadkin* line of cases.  The Fourth Circuit did not address the issue of whether the trustee had acted *ultra vires* because *Yadkin I* and *Yadkin III* involved a suit by beneficiaries of the bankruptcy estate.   *See Yadkin III*, 5 F.3d at 751; *Yadkin I*, 819 F.2d at 75.  The facts did not present allegations that the trustee had exceeded her authority; rather, the court's holding turned on the issue of whether the trustee had acted negligently in carrying out her statutory duties.  *Yadkin III*, 5 F.3d at 753-57; *Yadkin I*, 819 F.2d at 76.   As Eisenbarth subsequently recognizes, the precedent in the Fourth Circuit is distinguishable from the instant

facts because Eisenbarth is not a beneficiary of the bankruptcy estate, and his claim is a "garden variety breach of contract claim." Rebuttal at 3. Thus, because Eisenbarth is a third party non-beneficiary who seeks to bring a breach of contract claim against Smith, this Court is confronted with an immunity scenario, as contemplated by the third *Kashani* factor. To reiterate, then, the only question relevant to the issue of Smith's entitlement to quasi-judicial or derived judicial immunity is whether Smith acted within the scope of his authority.

In evaluating the third *Kashani* factor, the Court must again consider whether the action relates to or arises from acts within the trustee's duties as outlined in 11 U.S.C. § 704 or an order of the court. *Strand v. Loveridge*, No. 2:07-cv-00576-DAK, 2008 WL 893004, at *4 (D. Utah Mar. 28, 2008) (unreported decision); *In re McKenzie*, No. 08-16378, 2011 WL 3439081, at *11 (Bankr. E.D. Tenn. Aug. 5, 2011) (slip copy). The third *Kashani* factor may appear redundant at first blush, as the Court has already found, *supra*, that Smith acted within the scope of his authority for the purposes of the applicability of the *Barton* Doctrine. However, the *Barton* analysis required the Court to examine whether Smith's actions were *ultra vires* in the jurisdictional context, whereas the question at this stage of the Court's analysis must focus on whether Smith's actions were *ultra vires* in the substantive context. The context does not, however, change the Court's finding that Smith did not exceed the scope of his authority. As the Court previously discussed, Eisenbarth urges the Court to analogize the instant facts to cases of possession or seizure of property that is not property of the estate, which would remove Smith's actions from the scope of his duties as trustee. Rebuttal at 2. However, as the Court previously found, Smith's execution of the Purchase Agreement does not amount to seizure or possession of Jacqueline Cutright's property or any functional equivalent. Smith did not interfere in any way with her alleged rights in the Property as a joint tenant as he attempted to obtain her consent upon learning of her tenancy and ultimately never consummated the sale of the Property. Thus,

Court finds that execution of the Purchase Agreement arose within the scope of actions taken by Smith pursuant to § 704(a)(1) to sell the Property, in which the estate incontrovertibly held an interest.

Eisenbarth further argues that Smith must be deprived of derived judicial immunity because the Order Approving Sale was entered upon Smith's Motion to Sell, which did not disclose Jacqueline Cutright's interest.   Rebuttal at 4-5.  Courts holding that immunity attaches when a trustee, after disclosing all relevant facts, acts pursuant to court order, have so held to afford trustees a very limited form of derived judicial immunity that is not otherwise available in suits by beneficiaries.  *See, e.g.*, *In re Rollins*, 175 B.R. 69, 77 (Bankr. E.D. Cal. 1994) ("A trustee, who is subjected to a claim by a beneficiary of the bankruptcy estate, can claim a derived judicial immunity in one circumstance. If a trustee, prior to taking action, and after making a full disclosure of all relevant facts, obtains a court order, then acts on the basis of that order, he or she may be immune from any personal liability."); *Dana Commercial Credit Corp. v. Nisselson* (*In re Center Teleproductions, Inc.*), 112 B.R. 567, 578 (Bankr. S.D.N.Y. 1990) (holding, in a suit brought against the trustee and his agent by a creditor, that "a bankruptcy trustee is immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order. Where the trustee . . . negligently obtains a court order, or negligently or willfully carries out a court order he knew or should have known he wrongfully procured, however, personal liability will attach."). Eisenbarth's argument proceeds from a false premise because Eisenbarth's breach of contract claim arises out of the Purchase Agreement, which Smith executed pursuant to his authority under § 704(a)(1), not from any act undertaken by Smith pursuant to the Order Approving Sale. Moreover, Eisenbarth's argument further fails because Eisenbarth is not a beneficiary of bankruptcy estate and, thus, these facts do not present the narrow circumstance where a trustee

may attempt to seek derived judicial immunity from a suit by beneficiary on the basis that he acted pursuant to an order of the court.

Thus, because the Court finds that Smith acted within the scope of his authority, Smith would likely be immune from liability in the proposed litigation.[14]   Accordingly, this factor militates in favor of denying Eisenbarth's request for leave to sue Smith in state court.

> d.  Is Eisenbarth seeking a judgment against Smith in his personal capacity?

If a prospective plaintiff seeks to surcharge the trustee and immunity possibly applies, the fourth *Kashani* factor weighs in favor of denying leave to sue.  *See In re McKenzie*, 2011 WL 3439081, at *12.  As the Court has found that Smith would likely be immune from liability and, because Eisenbarth also seeks to recover damages from Smith in his personal capacity, this factor weights in favor of denying Eisenbarth's motion.

> e.  Does Eisenbarth's claim involve a negligent or willful breach of a fiduciary duty?

The final *Kashani* factor again focuses on the distinction "between a claim against a trustee for breach of fiduciary duty brought by a beneficiary of the estate and a claim against a trustee brought by a third party non-beneficiary alleging an action based on some other legal theory such as tort or contract."  *Id.* (citing *In re Heinsohn*, 231 B.R. at 64).   Although a claim based in tort or contract generally weighs in favor of resolution by the state court, if the claim is "so intertwined" with the trustee's duties and powers under the Bankruptcy Code, the state court nevertheless may not be the appropriate forum in which to litigate the claim.  *See id.*

---

[14] The Court emphasizes that it is not making any definitive findings on the issue of Smith's immunity from Eisenbarth's claim because the litigation itself is not directly before the Court and, moreover, the litigation encompassed by the Proposed Complaint is merely hypothetical at this stage.  In analyzing this *Kashani* consideration, courts have limited their findings to the question of *potential* for trustee immunity, not actual immunity.  *See, e.g.*, *Strand*, 2008 WL 893004, at *4 (finding that the third *Kashani* factor was established because the trustee *may* be entitled to immunity) (emphasis added); *In re McKenzie*, 2011 WL 3439081, at *11 (concluding that the *strong possibility* of trustee immunity weighed in favor of denial of leave to sue) (emphasis added).

Eisenbarth is not a beneficiary of the bankruptcy estate and, as such, Smith has no fiduciary duties to Eisenbarth.  It is axiomatic, then, that Eisenbarth cannot allege any breach of fiduciary duty.  The nature of Eisenbarth's claim is a typical state law claim for breach of contract and nothing more.  Thus, because Eisenbarth's claim does not involve any alleged breach of a fiduciary duty, this would generally militate in favor of granting Eisenbarth's motion for leave to sue.  However, because Eisenbarth's claim arises out of the Purchase Agreement, which Smith entered into pursuant to duties to liquidate assets of the estate under 11 U.S.C. § 704(a)(1), the Court finds that it is "so intertwined" with Smith's execution of his statutory duties the state court would not be in the best position to hear his claim.

Because the Court finds that each of the *Kashani* factors weighs in favor of denial of leave to sue Smith in state court, the Court concludes that Eisenbarth's Motion must be denied.

### III. Summary

Leave of this Court is required for Eisenbarth to bring his breach of contract claim against Smith in state court because his claim arises from the Purchase Agreement, which Smith executed in the course of exercising his duty, as trustee, to liquidate the Property, in which the estate had an interest.  Although this Court finds that Eisenbarth can state a *prima facie* case of breach of contract under Virginia law, the Court further finds that, after balancing the interests of all parties, leave to sue should not be permitted under the circumstances.  Consequently, reopening the bankruptcy case would serve no purpose because the underlying relief Eisenbarth seeks—leave to sue Smith in state court—will not be granted.  Therefore, for these reasons, the Court concludes that Eisenbarth's Motion for Leave to Sue should be denied and, accordingly, his Motion to Reopen should be also denied.

A separate Order will be entered by the Court consistent with the findings and conclusions contained in this Memorandum Opinion.

The Clerk shall transmit a copy of this Memorandum Opinion to James T. Lang, Esquire, counsel for the movant, Dell L. Eisenbarth; Anne G. Bibeau, Esquire, counsel for Tom C. Smith, Jr., Chapter 7 Trustee; and Debera F. Conlon, Assistant United States Trustee.

Entered this 30th day of May, 2012, at Norfolk in the Eastern District of Virginia.

STEPHEN C. ST. JOHN
United States Bankruptcy Judge